IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | |
|---|---|
| Shawn Wright, # 270520, | ) |
| | ) C.A. No. 2:09-cv-02714-JMC |
| Petitioner, | ) |
| | ) |
| v. | ) **OPINION AND ORDER** |
| | ) |
| John Ozmint, | ) |
| | ) |
| Respondent. | ) |

Petitioner, a prisoner of the State of South Carolina, seeks a writ of habeas corpus pursuant to 28 U.S.C. § 2254. This matter is before the court for review of the Magistrate Judge's Report and Recommendation [Entry # 34] made in accordance with 28 U.S.C. § 636(b)(1)(B) and Local Civil Rule 73.02 for the District of South Carolina.

The United States Magistrate Judge recommends that this court grant summary judgment in favor of Respondent and dismiss this action with prejudice on the grounds that it was not timely filed within the statutory period prescribed by 28 U.S.C. § 2244(d).

Petitioner was apprised of his right to file objections to the Report and Recommendation and has done so in a memorandum filed with the Clerk of Court on June 7, 2010 [Entry # 38]. In his opposition to the Report and Recommendation, Petitioner argues that his attorney's failure to notify him of the Remittitur constitutes extraordinary circumstances entitling him to the benefit of equitable tolling of the one-year statute of limitations. For the reasons contained herein, the petition is dismissed with prejudice.

**FACTS**

1

Petitioner is currently confined at the Lee Correctional Institution in the South Carolina Department of Corrections pursuant to orders of commitment from the Clerk of Georgetown County, South Carolina. Petitioner was indicted by the Georgetown County Grand Jury for Murder, Armed Robbery, Possession of A Firearm During the Commission of a Violent Crime, and Criminal Conspiracy during the June 2000 Term of the Court of General Sessions (2000-GS-22-499). On November 1, 2000, a jury found Petitioner guilty on all charges. The Honorable Sidney T. Floyd, Circuit Court Judge, sentenced Petitioner to life imprisonment for Murder, 25 years for Armed Robbery, five years for Criminal Conspiracy, and no sentence for the Possession of a Firearm During the Commission of a Violent Crime.

Petitioner timely filed a Notice of Appeal. On August 28, 2002, the South Carolina Court of Appeals filed an unpublished opinion dismissing Petitioner's appeal. The Remittitur was issued on September 30, 2002. Petitioner did not further appeal his conviction to the South Carolina Supreme Court.

Petitioner filed an Application for Post-Conviction Relief ("PCR") on March 21, 2003 (Civil Action No.: 2003-CP-22-0225). An evidentiary hearing convened on September 20, 2004 before the Honorable B. Hicks Harwell, Circuit Court Judge. On October 27, 2004, the PCR court filed an Order denying Petitioner's application for PCR and dismissing it with prejudice.

Petitioner timely filed a Notice of Appeal in his first PCR action. On July 8, 2005, the South Carolina Supreme Court dismissed Petitioner's PCR appeal due to Petitioner's failure to timely serve and file a Petition for Writ of Certiorari and Appendix in his appeal in accordance with Rule 227(c) of the South Carolina Appellate Court Rule. The Remittitur was issued on July 26, 2005. On August 3, 2005, counsel for Petitioner filed a Petition to Withdraw Remittitur and Order of Dismissal. On

August 25, 2005, the South Carolina Supreme Court denied the petition. Petitioner was not aware that he had been appointed a new attorney to represent him during his appeal from the first PCR, nor was he aware of the dismissal of his Petition for a Writ of Certiarari from the trial court's denial of PCR relief until he wrote to his PCR counsel seeking information regarding the status of his petition. At that time, Petitioner's PCR counsel advised him to file a successive PCR application alleging deprivation of his PCR appeal rights under *Austin v. State*, 305 S.C. 453, 409 S.E.2d 395 (1991).

On October 17, 2005, Petitioner filed a successive application for PCR (Civil Action No.: 2005-CP-22-1081), asserting, among other things, he was denied his right to perfect his appeal in his previous PCR case. The State filed a Return and Motion to Dismiss seeking dismissal of the application as untimely and successive. However, at the evidentiary hearing on the successive PCR application convened before the Honorable Steven H. John, Circuit Court Judge, on January 16, 2007, the State conceded that Petitioner did not knowingly waive his right to an appeal from the denial of his first PCR. On February 21, 2007, the PCR court filed an Order of Dismissal on the substantive grounds but affirmatively determined that Petitioner did not freely and voluntarily waive his appellate rights and found that he was entitled to petition the South Carolina Supreme Court for review of the issues raised in his first PCR pursuant to *Austin v. State*.

Petitioner timely filed a Notice of Appeal on March 15, 2007, which was perfected with the filing of a Petition for Writ of Certiorari. By Order filed July 11, 2008, the South Carolina Supreme Court transferred Petitioner's PCR appeal to the South Carolina Court of Appeals. On April 29, 2009, the South Carolina Court of Appeals granted Petitioner's petititon for certiorari, allowed for belated review of Petitioner's first PCR application, dispensed with further briefing, and proceeded

to review Judge Harwell's Order denying Petitioner's first PCR application. Upon review of the petition, the Court of Appeals denied the petition and granted counsel's request to withdraw. The Remittitur was issued on May 18, 2009. This petition followed on October 15, 2009.[1] Petitioner bases his Petition for a Writ of Habeas Corpus on the following grounds: (1) the PCR court erred in refusing to find Petitioner's trial counsel ineffective for failing to object when evidence of Petitioner's prior bad acts came before the jury and then failing to subsequently request a curative instruction; (2) the PCR court erred in refusing to find counsel ineffective for failing to object to the solicitor's improper comments during closing arguments; (3) the PCR court erred by not finding that Petitioner's appellate counsel was ineffective by failing to properly brief and argue issues during his PCR appeal; (4) the trial court erred in allowing an inmate to testify against Petitioner regarding his co-defendant's admission in jail that Petitioner participated with the co-defendant in the commission of the crimes because this statement was not in furtherance of the conspiracy; (5) Petitioner was denied a fair trial because an alternate juror was allowed to remain in the jury room during jury deliberations; (6) Petitioner's constitutional right to confront the witnesses against him was violated because the trial court refused to sever the trial and instead tried Petitioner and his co-defendant together; (7) the trial court erred in denying Petitioner's directed verdict motion; (8) the trial court erred by constructively amending Petitioner's indictment when he erroneously charged the jury on the offense of Aiding and Abetting.

---

[1] Pursuant to *Houston v. Lack*, 477 U.S. 266, 270-71 (1988), a prisoner's habeas pleading is filed at the moment of delivery to prison authorities for forwarding to the district court, and Petitioner has been given the benefit of that holding.

On February 4, 2010, Respondent filed a summary judgment motion.[2] Petitioner filed his response on April 30, 2010.

## STANDARD OF REVIEW

The Magistrate Judge makes only a recommendation to this court. The recommendation has no presumptive weight. The responsibility to make a final determination remains with this court. *See Mathews v. Weber*, 423 U.S. 261, 270-71 (1976). The court is charged with making a *de novo* determination of those portions of the Report and Recommendation to which specific objection is made, and the court may accept, reject, or modify, in whole or in part, the recommendation of the Magistrate Judge or recommit the matter with instructions. 28 U.S.C. § 636(b)(1). In the absence of objections to the Magistrate Judge's Report and Recommendation, "a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310, 315 (4th Cir. 2005) (quoting Fed.R.Civ.P. 72 advisory committee's note).

## DISCUSSION

**A. Calculation of the Statutory Period under 28 U.S.C. § 2244**

In his objection to the Report and Recommendation, Petitioner cites *Taylor v. Lee*, 186 F.3d 557, 561 (4th Cir. 1999), for the proposition that "[u]nder § 2244(d)(2) the entire period of state post-conviction proceedings, from initial filing disposition by the highest state court (whether decision on the merits, denial of certiorari, or expiration of the period of time to seek further

---

[2] Petitioner received a copy of the summary judgment motion, and on February 5, 2010, the court advised him of the dismissal and summary judgment procedure, as well as provided him with pertinent extracts from Rule 12 and 56 of the Federal Rules of Civil Procedure, similar to what is required under *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975). On March 5, 2010, and again on April 7, 2010, the court granted Petitioner extensions of time to file his response to Respondent's motion.

5

appellate review), is tolled from the limitations period for Federal Habeas Corpus petitioners..." The Magistrate Judge has erroneously calculated the statute of limitations period under *Taylor* and other Fourth Circuit precedent.

The provisions of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") apply to this case. *Lindh v. Murphy*, 117 S. Ct. 2059 (1997); *Brown v. Angelone*, 150 F.3d 370, 372 (4th Cir. 1998) (holding that the AEDPA governs any federal petition for a writ of habeas corpus filed after the signing of the AEDPA on April 24, 1996). The AEDPA provides: "A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court" and "[t]he limitation period shall run from the latest of... the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review." 28 U.S.C. § 2244 (d)(1)(A). However, the AEDPA further provides that the "time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is *pending* shall not be counted toward any period of limitation under this subsection." 28 U.S.C. § 2244( d)(2) (emphasis added).

In his Report and Recommendation, the Magistrate Judge correctly concluded that Petitioner's conviction was final when the Remittitur was issued in his direct appeal on September 30, 2002. *See Harris v. Hutchinson*, 209 F.3d 325 (4th Cir. 2000) (the statute of limitations begins to run on the date when the judgment of conviction becomes final at the end of direct review). From that date, Petitioner had 365 days to file his petition for a writ of habeas corpus in federal court, as the statute of limitations began to run on October 1, 2002. The Magistrate Judge made the following calculations regarding the statutory period:

6

(1) the statute of limitations ran from October 1, 2002 until March 21, 2003, the date on which Petitioner filed his first application for PCR in state court. During that time period, 172 days elapsed;

(2) the statute of limitations was tolled during the pendency of Petitioner's first PCR action from March 21, 2003 until July 26, 2005;

(3) the statute of limitations began to run again on July 27, 2005, the date after the Remittitur issued, and Petitioner had 193 days left to file his federal habeas corpus petition;

(4) the statute of limitations ran for another 83 days before Petitioner filed his second application for PCR on October 17, 2005;[3]

(5) the statute of limitations was again tolled during the pendency of the Petitioner's second PCR until the Remittitur issued on May 18, 2009;

(6) at that point, Petitioner had 110 days left to file his federal habeas corpus petition or until September 8, 2009;[4]

(7) Petitioner filed the instant action on October 15, 2009, which was 37 days beyond the AEDPA limitations period.

Upon review of the record in this case, it appears on August 3, 2005, counsel for Petitioner filed a Petition for a Writ of Certiorari to withdraw the Remittitur and Order of Dismissal in the South Carolina Supreme Court. On August 25, 2005, the South Carolina Supreme Court denied this motion. The Magistrate Judge failed to account for the time period during which counsel for Petitioner appealed to the South Carolina Supreme Court for a writ of certiorari. *See Saguilar v. Harkleroad*, 348 F. Supp. 2d 595, 597 (M.D.N.C. 2004) (finding that writ of certiorari does not figure into direct review of the actual conviction but noting that federal courts assume that an appeal for a writ of certiorari during a PCR proceeding does figure into the determination of the statutory

---

[3]The dispute centers around this time period.

[4]The Magistrate Judge noted that the time period would have expired on September 5, 2009, which was Saturday of Labor Day weekend. However, under Rule 6(a)(1)(C) of the Federal Rules of Civil Procedure, Petitioner could have timely filed on the next business day or Tuesday, September 8, 2009.

period); *Taylor v. Lee*, 186 F.3d 557, 561 (4th Cir. 2000) (allowing for inclusion of writs of certiorari in PCR proceedings to determine finality under AEDPA). Therefore, this court now calculates the limitations period as follows:

(1) the statute of limitations ran from October 1, 2002 until March 21, 2003, the date on which Petitioner filed his first application for Post Conviction Relief ("PCR") in state court. During that time period, 172 days elapsed;

(2) the statute of limitations was tolled during the pendency of Petitioner's first PCR action from March 21, 2003 until August 25, 2005;[5]

(3) the statute of limitations began to run again on August 26, 2005, the date after the Remittitur issued, and Petitioner had 193 days left to file his federal habeas corpus petition;

(4) the statute of limitations ran for another 52 days before Petitioner filed his second application for PCR on October 17, 2005;

(5) the statute of limitations was again tolled during the pendency of the Petitioner's second PCR until the Remittitur was issued on May 18, 2009;

(6) the statute of limitations began to run again on May 19, 2010, and at that point, Petitioner had 141 days left to file his federal habeas corpus petition or until October 6, 2009;

(7) Petitioner filed the instant action on October 15, 2009, which was 9 days beyond the AEDPA limitations period.

**B. Equitable Tolling**

The Magistrate Judge further found that extraordinary circumstances did not exist entitling Petitioner to equitably toll the statute of limitations based on his attorney's alleged failure to communicate with Petitioner. Petitioner argued that he lost the days between August 26, 2005 and October 17, 2005 (totaling 53 days) because his lawyer failed to notify him that the South Carolina Supreme Court had denied his request for a writ of certiorari. Rather, Petitioner argues that he did not become aware of the denial until September 2, 2005. As a result, Petitioner argues that the

---

[5] This period of time included Petitioner's Petition for Writ of Certiorari to withdraw the Remittitur and Order of Dismissal in the South Carolina Supreme Court.

8

statutory period should be equitably tolled during this time frame which would result in his timely petition for a writ of habeas corpus in federal court.

Although the United States Supreme Court has not yet decided whether equitable tolling is available under § 2244(d),[6] it is well established under Fourth Circuit jurisprudence that the one-year statutory period may be subject to equitable tolling under very limited circumstances. *See Rouse v. Lee*, 339 F.3d 238, 246 (4th Cir. 2003) (en banc); *Harris v. Hutchinson*, 209 F.3d 325, 328-30 (4th Cir. 2000) (recourse to equitable tolling must be guarded and infrequent). Moreover, a petitioner seeking to invoke equitable tolling must establish that the government's wrongful conduct prevents a petitioner from filing a timely petition or when extraordinary circumstances, beyond the petitioner's control and external to his own conduct, make timely filing impossible. *Harris*, 209 F.3d at 328-30; *see also Rouse*, 339 F.3d at 247; *Spencer v. Sutton*, 239 F.3d 626, 630 (4th Cir. 2001). Equitable tolling should be reserved "for those rare instances where- due to circumstances external to the party's own conduct- it would be unconscionable to enforce the limitation period against the party and gross injustice would result." *Harris*, 209 F.3d at 330.

Petitioner attempts to distinguish the facts of the present case from those that existed in *Harris*, in which the court found that an attorney's mistake in calculating the filing date under the AEDPA did not warrant equitable tolling. Petitioner argues that in contrast to Harris' attorney, Petitioner's attorney did not make any attempts to communicate with him regarding the South Carolina Supreme Court's denial of certiorari. Moreover, Petitioner argues that because he was represented by counsel in his PCR action, counsel is obligated to communicate with him, as he may

---

[6]*See Lawrence v. Florida*, 549 U.S. 327, 336 (2007) (assuming without deciding that equitable tolling is available under § 2244(d); *Pace v. DiGugliemo*, 544 U.S. 408, 418, n.8 (2005) ("We have never squarely addressed the question of whether equitable tolling is applicable to [§2244(d)(2)'s] statute of limitations.").

not directly petition the court on his own behalf. However, the activities of Petitioner's attorney are ascribed to Petitioner and are not deemed "circumstances external to the party's own conduct" for purposes of applying equitable tolling. *Rouse*, 339 F.39 at 250 (quoting *Harris*, 209 F.3d at 330). In other words, "[f]ormer counsel's errors are attributable to [the petitioner] not because he participated in, ratified, or condoned their decisions, but because they were his agents, and their actions were attributable to him under standard principles of agency." *Id.*; *see also Irwin v. Dep't of Veterans Affairs*, 498 U.S. 89, 92 (1990) ("Under our system of representative litigation, each party is deemed bound by the acts of his lawyer-agent and is considered to have notice of all facts, notice of which can be charged upon the attorney."). Therefore, for notice purposes, Petitioner was deemed to have notice on the date in which his attorney received the Remittitur.[7] Furthermore, a petitioner does not have a constitutional right to counsel in his federal habeas proceedings and may not assert ineffective assistance of PCR counsel or habeas counsel under § 2254, and a statutory right to counsel does not cause attorney error to be imputed to the State. *See Rouse*, 339 F.3d at 249 (citing 28 U.S.C. § 2254(i)); *see also Coleman v. Thompson*, 501 U.S. 722, 753-54 (1991); *Pennsylvania v. Finley*, 481 U.S. 551, 555-56 (1987); *Hunt v. Nuth*, 57 F.3d 1327, 1340 (4th Cir. 1995). Therefore, "[i]n the absence of constitutional ineffective assistance of counsel, attorney error is attributable to the petitioner." *Coleman*, 501 U.S. at 753.

Furthermore, it does not appear from the record that the delay was even negligible. The Supreme Court issued the denial on August 25, 2005. Petitioner became aware of the denial on September 2, 2005, a mere seven days after the Supreme Court's denial of the petition for certiorari. At this point, Petitioner still had 141 days in which to file his petition in federal court.

---

[7]Neither party has offered into the record a date on which counsel for Petitioner received notice.

However, even assuming that counsel for Petitioner was negligent in failing to communicate with Petitioner, it is well-settled that an attorney's negligence does not justify equitable tolling absent extraordinary circumstances. *Irwin v. Dep't of Veterans Affairs*, 498 U.S. 89, 96 (1990) (equitable tolling did not apply where counsel for the petitioner was away from his office when the notice was received, and the petitioner subsequently filed within thirty days after he personally received notice); *Rouse*, 339 F.3d at 246 ("Principles of equitable tolling do not extend to garden variety claims of excusable neglect."); *Merritt v. Blaine*, 326 F.3d 157, 169 (3d Cir. 2003) (applying general rule that "attorney error, miscalculation, inadequate research, or other mistakes have not been found to rise to the 'extraordinary' circumstances required for equitable tolling" (internal quotation marks omitted)); *Beery v. Ault*, 312 F.3d 948, 951 (8th Cir. 2002) ("Ineffective assistance of counsel generally does not warrant equitable tolling."); *Fierro v. Cockrell*, 294 F.3d 674, 683 (5th Cir. 2002) ("[C]ounsel's erroneous interpretation of the statute of limitations provision cannot, by itself, excuse the failure to file [the] habeas petition in the district court within the one-year limitations period."); *Harris*, 209 F.3d at 331 ("a mistake by a party's counsel in interpreting a statute of limitations does not present the extraordinary circumstances beyond the party's control where equity should step in to give the party the benefit of his erroneous understanding."); *Sandvik v. United States*, 177 F.3d 1269, 1272 (11th Cir. 1999) (refusing to apply equitable tolling where late filing was caused by attorney's use of ordinary mail to send petition less than a week before it was due).

In addition, "[t]he limitations period of the AEPDA... runs from 'the date on which the judgment became final,'... not from the date on which [the petitioner] was served with (or, in this case, merely received) notification of the final judgment." *Rouse*, 339 F.3d at 245 (citing 28

11

U.S.C.A. § 2244(d)(1)(A)) (in finding that the mailbox rule did not apply to toll the statute of limitations under the AEPDA). The same logic applies in the present case in that the statute of limitations began to run on the date that the judgment became final and Petitioner's PCR action was no longer pending, and not on the date that Petitioner discovered the disposition of his case.

Finally, the court also notes that Petitioner's own lack of diligence in pursuing his federal remedies precludes the application of equitable tolling. *Spencer*, 239 F.3d at 630. Petitioner has presented no circumstances, and certainly no extraordinary circumstances, to explain why it was impossible for him to file his § 2254 petition within the 141 days that were still remaining after the Remittitur issued on May 18, 2009. Therefore, equitable tolling is not available to Petitioner in this case.

## CONCLUSION

For the foregoing reasons, the court affirms in result the Magistrate Judge's Report and Recommendation [Entry # 34]; and it is **ORDERED** that Respondent's Motion for Summary Judgment [Entry # 20] **is GRANTED**, and the Petition for a Writ of Habeas Corpus [Entry # 1] is dismissed with prejudice.

**IT IS SO ORDERED**.

s/ J. Michelle Childs<br>
United States District Judge

September 21, 2010
Greenville, South Carolina

12